The **CINCINNATI INSURANCE COMPANIES,** Plaintiff–Appellant,

v.

Forrest L. **KIRK,** Defendant–Appellee.

No. 10–0460.

Court of Appeals of Iowa.

May 25, 2011.

Amy R. Teas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Sasha L. Monthei of Scheldrup, Blades, Schrock, Smith, & Aranza, P.C., Cedar Rapids, for appellee.

Heard by SACKETT, C.J., and DOYLE and DANILSON, JJ.

SACKETT, C.J.

Plaintiff, The Cincinnati Insurance Companies, appeals the district court's dismissal of its lawsuit based on a lack of subject matter jurisdiction. Cincinnati claims the district court has authority to hear its claims against defendant, Forrest L. Kirk, for fraudulent misrepresentation, unjust enrichment, money had and received, and restitution because these claims are outside the jurisdiction of the Iowa Workers' Compensation Commissioner. We reverse and remand.

**I. BACKGROUND AND PROCEEDINGS.** On September 5, 2007, Kirk sustained an injury to his left arm, which Kirk claimed arose out of his employment with L.L. Pelling Company. The injury was accepted by L.L. Pelling's workers' compensation carrier, Cincinnati, and Kirk was provided medical treatment and indemnity benefits. When Kirk's recovery did not progress as anticipated, Cincinnati conducted surveillance of Kirk. On November 5 and 14, 2008, Kirk was filmed striking his left arm while in his vehicle immediately prior to an appointment with his workers' compensation physician. Cincinnati provided the video to Kirk's treating physicians who opined a portion of Kirk's medical care and recovery time was not related to the work injury, but was instead related to Kirk's own actions.

Cincinnati filed a petition against Kirk on September 24, 2009, asserting claims of fraudulent misrepresentation, and as well as equitable claims for unjust enrichment, money had and received, and restitution. Cincinnati sought the reimbursement of money exceeding $29,000 for medical expenses, indemnity benefits, administrative expenses incurred to uncover the fraud, interest, punitive damages, attorney fees, and court costs. Kirk filed a pre-answer motion to dismiss asserting the district court lacked subject matter jurisdiction to hear Cincinnati's claims as they fell within the exclusive jurisdiction of the Workers' Compensation Commissioner. Cincinnati resisted the motion to dismiss. On February 22, 2010, after a hearing which was not reported, the district court granted Kirk's motion to dismiss concluding,

> the issues before the Court in this matter are subject to the exclusive jurisdiction of the Iowa Workers' Compensation Commissioner. The legislature has made it clear that all rights and remedies to be determined in a workers' compensation case are to be first considered by the Commissioner, and the Commissioner has the authority to consider the

issues raised by Plaintiff. The simplicity intended for workers' compensation proceedings would be undermined if this Court was to intervene with the original jurisdiction of the Commissioner in deciding all issues related to Defendant's workers' compensation claim.

Cincinnati filed a notice of appeal March 16, 2010.

## II. SCOPE OF REVIEW.

This court reviews a district court's ruling on a motion to dismiss for correction of errors at law. *Barnes v. State*, 611 N.W.2d 290, 292 (Iowa 2000). The dismissal will be affirmed if the petition shows no right of recovery under any state of facts. *Id.* We accept as true the facts alleged in the petition and do not consider facts contained in the motion to dismiss. *McGill v. Fish*, 790 N.W.2d 113, 116 (Iowa 2010).

## III. SUBJECT MATTER JURISDICTION.

Subject matter jurisdiction is the power of a court to hear and determine cases of a general class to which the case belongs. *Cooper v. Kirkwood Cmty. Coll.*, 782 N.W.2d 160, 164 (Iowa Ct.App.2010). It is conferred by constitution or statute and it cannot be waived or vested by the consent of the parties. *Id.* Pursuant to Iowa Code section 602.6101 (Iowa 2009), the Iowa district courts have "exclusive, general, and original jurisdiction of all actions ... except in cases where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body." A workers' compensation case is an example of such an exception where the legislature has conferred original jurisdiction upon an administrative body, the Workers' Compensation Commissioner, to hear and decide cases involving workplace injuries. Iowa Code § 85.20. The Commissioner, as an administrative agency, "has no inherent power and has only such authority as is conferred by statute or is necessarily inferred from the power expressly granted." *Zomer v. West River Farms, Inc.*, 666 N.W.2d 130, 132 (Iowa 2003). Despite the legislature granting the Workers' Compensation Commissioner exclusive original jurisdiction over workers' compensation cases, Cincinnati claims the district court maintains the original jurisdiction to hear this case. We agree.

## A. Adequate Remedy.

The Workers' Compensation Act is intended to be the exclusive and sole remedy for workers who are injured on the job. Iowa Code § 85.20. Our courts have found an exception to the exclusive jurisdiction of the commissioner in the insurance bad faith context. *Tallman v. Hanssen*, 427 N.W.2d 868, 871 (Iowa 1988); *see also Wilson v. IBP, Inc.*, 558 N.W.2d 132, 138 (Iowa 1996) (holding the intentional torts of breach of fiduciary duty and defamation fall outside the exclusive jurisdiction of the Workers' Compensation Commissioner); *Reedy v. White Consol. Indus., Inc.*, 503 N.W.2d 601, 603 (Iowa 1993) (finding bad faith claims can be maintained against self-insured employers); *Boylan v. Am. Motorists Ins. Co.*, 489 N.W.2d 742, 744 (Iowa 1992) (finding bad faith claims in workers' compensation cases are not precluded by the exclusive remedy provision).

In *Tallman*, the supreme court ruled,

It is axiomatic that an employee's rights and remedies arising from an injury suffered in the course of employment are exclusively provided under Iowa Code chapter 85. A district court would normally have no subject matter jurisdiction over a claim that an employee is entitled to workers' compensation benefits. But this exclusivity principle is limited to matters surrounding a job-related injury and does not extend to subsequent dealings during which a tort

may arise by reason of bad faith on the part of an employer's insurer.

. . . .

"We hold, therefore, that the exclusivity provision of the Workers' Compensation Act does not bar an action by the employee against the insurance carrier for the commission of an intentional tort. The independent tort is not compensable under our Workers' Compensation Act." 427 N.W.2d at 870–71 (quoting *Matter of Certification of Question of Law*, 399 N.W.2d 320, 323 (S.D.1987)). In bad faith claims our courts have recognized that "where no adequate remedy is provided by the Iowa workers' compensation act, then an injured worker's claim falls outside of the exclusivity provision." *Wilson*, 558 N.W.2d at 137. When an adequate remedy is found in the Act, the claim must be submitted to the jurisdiction of the commissioner. *See Barnes*, 611 N.W.2d at 293 (finding the Workers' Compensation Act provided an adequate remedy for wages lost for medical appointments, and thus, the claim must be submitted to the commissioner). In this case, the question then becomes whether Cincinnati has an adequate remedy under the Act for Kirk's alleged fraudulent conduct.

In its petition in district court, Cincinnati alleges it should be entitled to recover, among other things, all indemnity and medical benefits paid, which were not caused by the work injury; all costs in the investigation and prosecution of the fraud including reasonable attorney fees; and punitive damages. While we do not pass on whether Cincinnati is entitled to recover the amounts it claims, we look to see whether there is a remedy under the Workers' Compensation Act for these claims.

We look first to see whether Cincinnati would be able to recover under the Act the weekly indemnity benefits it paid as a result of the alleged fraud. When indemnity benefits have been overpaid, Iowa Code section 85.34(4) and (5)[1] provide an insurance carrier can receive a credit in the amount of the overpayment against its liability for future indemnity payments to the same injured worker. This section does not authorize the commissioner to order the worker to repay the benefits wrongfully paid; instead, it allows the insurance carrier and employee to reach a voluntary settlement agreement for the repayment. Iowa Code § 85.34(5). If the worker does not want to repay the benefits, neither the commissioner nor the insurance carrier can force the worker to pay. *Id.*

While this provision does provide some remedy when a carrier pays more indemnity benefits than required, we find this remedy is inadequate in a case of alleged fraudulent conduct. Unless another remedy is found, a worker who perpetrates a fraud on an employer and insurance carrier can profit with no penalty. In addition, the remedy of the credit under section 85.34(5) is of no use in a case such as this where the employee no longer works for the employer. This is because there will not be a future work injury with the same employer where the credit could be applied. *See Swiss Colony, Inc. v. Deutmeyer*, 789 N.W.2d 129, 137 (Iowa 2010) (holding section 85.34(5) must be interpreted to apply to weekly overpayments, not an overpayment of the total benefit award,

---

**1.** Iowa Code section 85.34(4) provides excess payments of temporary indemnity benefits can be credited against any liability for permanent disability. Section 85.34(5) provides overpayments of weekly benefits, both tempo-

rary and permanent, can be credited against the same employer's liability for permanent disability benefits for a subsequent injury within eight years of the overpayment.

thus the carrier only has a credit on the future permanency benefits for a subsequent injury).

The inadequacy of the remedy for the recovery of indemnity benefits under section 85.34 is similar to the inadequacy of the penalty benefits remedy under section 86.13 to address bad faith claims. In *Boylan*, the supreme court found there was no adequate remedy for an injured employee who was wrongfully denied benefits despite the existence of statutory penalty benefits under the Workers' Compensation Act. 489 N.W.2d at 744. The *Boylan* court found the statutory penalty benefits applied only to a delay in payment of weekly benefits, contemplated negligent rather than willful or reckless acts, and found there was no remedy for the failure to pay medical benefits. *Id.* Because section 86.13 was an inadequate remedy for the type of bad-faith conduct the employee alleged the insurer committed, the court found a separate remedy in district court was needed. *Id.*

Just like in *Boylan*, we find it unlikely the legislature intended the credit provision in section 85.34 to be the sole remedy for insurance carriers where a claimant fraudulently obtains benefits. The credit provision contemplates overpayments made to a claimant in good faith and it provides no remedy where the employee no longer works for the employer. To allow section 85.34 to be the insurance carrier's sole remedy in the case of fraudulent conduct is to permit injured workers to commit fraud with no recourse.

Cincinnati also seeks repayment of medical expenses which it alleges were obtained by fraud. We note section 85.27(3) provides an employer, insurance carrier, or health care provider can seek relief from the Workers' Compensation Commissioner when a dispute arises over the excessiveness or necessity of medical charges.

However, the dispute here is not between the insurance carrier and the health care provider over the excessiveness of the charges or the necessity of the services. The dispute here is whether the claimant sought and received medical treatment for a self-inflicted injury rather than a workplace injury. In the event the treatment provided was caused by the claimant rather than the work injury, the Act provides no remedy for the recovery of the fraudulently procured medical payments. *See Boylan*, 489 N.W.2d at 744.

Finally, both parties concede that no provision of the Workers' Compensation Act grants the Workers' Compensation Commissioner the ability to award punitive damages as requested in Cincinnati's petition. While an employee has the ability to make a claim for penalty benefits under section 86.13, which allows for compensation above and beyond the indemnity benefits owed under the Act for an insurance carrier's wrongful denial, delay, or termination of benefits, no such penalty provision is found in favor of the insurance carrier when an employee fraudulently makes a claim.

Because Cincinnati does not have an adequate remedy under the Workers' Compensation Act for Kirk's alleged fraudulent conduct, we conclude the district court, not the commissioner, has the subject matter jurisdiction to hear the case. Furthermore, our case law establishes the exclusive jurisdiction of the Workers' Compensation Act does not extend to claims of fraudulent procurement of workers' compensation benefits.

■ **B. Fraud "Extrinsic and Collateral" to Workers' Compensation.** In *Comingore v. Shenandoah Artificial Ice, Power, Heat & Light Co.*, 208 Iowa 430, 432, 226 N.W. 124, 125–26 (1929), an insurance carrier sought reformation of a work-

ers' compensation settlement agreement and restitution of benefits paid when the claimant failed to inform the insurance carrier she had remarried—a condition that cut off her rights to benefits. The insurance carrier filed an application before the commissioner seeking to reform the settlement agreement and also seeking the repayment of the benefits wrongfully paid after the claimant remarried. *Comingore,* 208 Iowa at 432, 226 N.W. at 156–26. The claimant asserted the commissioner had no jurisdiction to hear the case. *Id.* at 432, 226 N.W. at 126. The court concluded the commissioner had the jurisdiction to reform the settlement agreement, but had no authority to order the repayment of the money. *Id.* at 441–42, 226 N.W. at 129–30.

As to the restitution of the moneys theretofore paid, the Commissioner acted without jurisdiction in the premises. An action in assumpsit for money had and received by the claimant beyond the statutory period is for another tribunal to determine and decide.

*Id.*

The *Comingore* decision was followed by *Doyle v. Dugan,* 229 Iowa 724, 725–26, 295 N.W. 128, 129 (1940), where the guardian for an injured minor worker petitioned the district court to have a workers' compensation settlement agreement set aside based on the employer's fraudulent conduct. The employer challenged the jurisdiction of the district court claiming the commissioner had the power to set aside an agreement he had approved. *Doyle,* 229 Iowa at 729, 295 N.W. at 130. Relying on the *Comingore* decision, the court held,

[w]e are of the opinion and hold that, since the commissioner does not have jurisdiction to order the repayment of workmen's compensation paid pursuant to an agreement approved by him but under which more compensation was paid than due because of the wrongful

act of the claimant, he likewise has no jurisdiction to determine the rights of the parties where as here his jurisdiction is challenged because of fraud on the part of the employer. In each instance, the matter is one for another tribunal to determine and decide.

*Id.* at 730, 295 N.W. at 131. The court found the fraud was "extrinsic and collateral to the matter directly decided by the industrial commissioner when he approved the agreement for compensation." *Id.* at 731, 295 N.W. at 131. Therefore, the court concluded the "commissioner does not have jurisdiction to entertain such a bill in equity. The district court was the only tribunal having such jurisdiction." *Id.* at 731–732, 295 N.W. at 132.

This holding was again affirmed in *Ford v. Barcus,* 261 Iowa 616, 617, 155 N.W.2d 507, 508 (1968), where the workers' compensation carrier filed suit in district court to set aside a settlement agreement and sought the repayment of the funds already paid based on the claimant's fraudulent conduct. The claimant initially reported he was injured within the scope of work, but it was later discovered he was injured as a result of horseplay. *Barcus,* 261 Iowa at 618–19, 155 N.W.2d at 508–09. The claimant challenged the jurisdiction of the district court, but the supreme court found based on *Doyle* and *Comingore* the district court, not the commissioner, had jurisdiction to hear the claim and order the restitution necessary. *Id.* at 622, 155 N.W.2d at 511. The *Barcus* court concluded, "*Doyle* was decided in 1940. The legislature has not seen fit to enlarge the commissioner's jurisdiction in this area. We are not persuaded our holding in *Doyle* should be changed." *Id.*

Kirk asserts Cincinnati's claim is within the jurisdiction of the commissioner because at the heart of Cincinnati's claim is whether the benefits Kirk was paid were

in fact owed under the workers' compensation law, and whether he was provided unnecessary medical care. Kirk claims allowing the district court to insert itself into the question of whether benefits paid by Cincinnati should be refunded undermines the commissioner's role to decide what benefits Kirk is entitled to under the Act.

However, we find Cincinnati's claim is not based on the facts of Kirk's initial work injury, which Cincinnati does not dispute, but is instead based on Kirk's alleged fraudulent conduct, which occurred subsequent to and independent of the work injury. As stated above where the fraud complained of was "extrinsic and collateral" to the workers' compensation matter, the commissioner has no jurisdiction. *Doyle,* 229 Iowa at 731, 295 N.W. at 131. We are mindful that where a claim is predicated on the same facts as the work injury itself, simply labeling it as fraud is not sufficient to avoid the exclusivity of the Workers' Compensation Act. *Nelson v. Winnebago Indus., Inc.,* 619 N.W.2d 385, 389 (Iowa 2000). But where the employee's fraudulent conduct occurs independent of and subsequent to the work injury, we find the district court, not the commissioner, has the subject matter jurisdiction to hear the case. The commissioner only has the power expressly conferred by statute. *Zomer,* 666 N.W.2d at 132. "The legislature has not seen fit to enlarge the commissioner's jurisdiction in this area" since *Barcus* was decided in 1968, and we see no reason to do so here. *Barcus,* 261 Iowa at 622, 155 N.W.2d at 511.

C. ***Zomer* Application.** The district court relied on the case of *Zomer v. West River Farms, Inc.,* 666 N.W.2d 130, 135 (Iowa 2003) to support its decision the commissioner had the authority to consider the issues raised in this case. We find the district court and Kirk interpret *Zomer* too broadly. In *Zomer,* "the compensability of the claimant's work-related injury depend[ed] on whether the employer's insurance policy specifically cover[ed] the claimant." *Zomer,* 666 N.W.2d at 131. The Iowa Supreme Court ruled the commissioner had the jurisdiction to decide whether the insurance policy should be reformed "because, under the unique circumstances of this case, a determination of insurance coverage was an essential prerequisite to a determination of the compensability of the claimant's injury." *Id.* The court acknowledged the commissioner did not have "equitable jurisdiction" in the same sense as a court, but found the commissioner did have the authority to apply equitable principals of reformation to the insurance contract because such action was "essential to a determination the employee's entitlement to benefits under the act." *Id.* at 134–35. Thus, the court concluded "the test with respect to the commissioner's jurisdiction is whether the disputed matter is necessary to a determination of liability under the workers' compensation statute. If so, the commissioner has the power to decide the issue." *Id.* at 135.

Applying the test laid out in *Zomer* to this case, we find the commissioner has no jurisdiction because the issue of whether Kirk fraudulently received workers' compensation benefits is not an "essential prerequisite to a determination of compensability" of Kirk's work-related injury. *Id.* at 131. Cincinnati is not disputing Kirk's entitlement to workers' compensation benefits on account of this work injury. Instead, Cincinnati's claims are based on Kirk's fraudulent conduct, subsequent to his work injury. These claims are separate and distinct from the workers' compensation case.

C. **Potential Jurisdictional Conflicts.** We realize both the commissioner and the district court would need to hear evidence and reach factual findings regarding Kirk's

fraudulent misconduct. This could result in inconsistent or contradictory findings. However, this potential problem does not mean the district court does not have subject matter jurisdiction over Cincinnati's claims. Instead, these potential conflicts should be addressed using the established principles of issue preclusion and judicial stays. This solution has been successfully employed in bad-faith claims arising out of workers' compensation injuries.

In *Reedy*, the federal district court asked the Iowa Supreme Court whether an employee must litigate and resolve his workers' compensation case before bringing a bad-faith claim against a self-insured employer in federal court. 503 N.W.2d at 602. In response to the question the court stated,

> the industrial commissioner has no jurisdiction to determine the type of claim on which the action is based. Nonetheless, that administrative agency has jurisdiction to settle important factual questions that may have a direct bearing on the bad-faith claim.
>
> In our view, it would be clearly preferable to have the extent of the defending party's liability for such payments determined in the first instance by the administrative agency entrusted with the administration of the Iowa workers' compensation laws. Moreover, we believe that decisions made through this administrative process that are relevant to the issues in the bad-faith action will, in many instances, carry preclusive effect under the principles we recognized in *Board of Supervisors v. Chicago & North Western Transportation Co.*, 260 N.W.2d 813, 815 (Iowa 1977).
>
> We believe, however, that, within the context of a bad-faith tort claim based on failure to provide workers' compensation benefits, the goal of having material issues of benefit entitlement decided in

the first instance by the industrial commissioner is best handled through a discretionary abstention policy that operates to delay the consideration of those issues by a court. Cases filed prior to the completion of the administrative process should not be routinely dismissed on ripeness grounds. That is a circumstance that should encourage courts, whenever it is feasible to do so, to permit the case to remain on the docket while awaiting the administrative determination.

*Id.* at 603–04; see *also Gardner v. Hartford Ins. Accident & Indemn. Co.*, 659 N.W.2d 198, 202–07 (Iowa 2003) (applying issue preclusion in a bad-faith claim against a workers' compensation carrier). The district court in this case had legitimate concerns regarding the interplay between the workers' compensation proceeding and the district court fraud action, but these concerns do not require us to find the commissioner has jurisdiction to hear the fraud claims. These concerns can be addressed by staying the district court matter until after the workers' compensation matter is concluded and issue preclusion can be applied, if supported, to avoid inconsistent results.

The district court's ruling granting Kirk's pre-answer motion to dismiss is reversed and this case is remanded for further proceedings.

**REVERSED AND REMANDED.**